**Charles James RUNNELS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–73–333.**

Court of Criminal Appeals of Oklahoma.

June 14, 1974.

Rehearing Denied June 24, 1974.

Roger L. Johnston, Johnston & Franklin, Enid, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Charles James Runnels, hereinafter referred to as defendant, was charged by Information in the District Court of Garfield County, Oklahoma, with the crime of Child Beating in Case No. CRF–73–191. He was sentenced to serve a term of four (4) years imprisonment in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

Briefly stated, the evidence adduced at trial is as follows: Mary Dooley, mother of Mary Deniece Dirham, related that she knew the defendant and that her daughter and the defendant had lived together as man and wife. She further testified that Lori Deniece Dirham is her granddaughter and that she was eighteen months old in February of 1973. On February 16, 1973, as a result of a telephone call, she proceeded to her daughter's home to pick up the baby. When she arrived, the defendant was there and her daughter was at work. She found the child lying on a bed with nothing on but a diaper. Her skin was "badly tore up" and the witness was afraid that clothes would stick to the child.

The witness wrapped the child in a blanket and proceeded to take her to her car. The child made no bodily movement except twitching and merely stared at the witness. Mrs. Dooley subsequently went to her social worker in Cherokee who directed her to a doctor. She then proceeded to the hospital emergency room in Enid, Oklahoma. Shortly thereafter, the child was rushed to a hospital in Oklahoma City.

Dr. William Simon, a pediatrician in Enid, testified that on February 16, 1973, he examined Lori Deniece Dirham in the hospital emergency room. He observed that the child was unresponsive to stimuli, was stuporous and in a comatose state, was very dehydrated and had numerous scars over her body. The witness stated that some of the scars were older and some bad lesions or sores were healing. There were

abrasions and swelling about the eyes and there was a fresh wound on the infant's arm some two inches in length and longer abrasions over the left hip and around the waist. Dr. Simon also observed other numerous scars on the child's buttocks and stated that the child was barely breathing and in an extremely critical condition. Upon further examination, the doctor concluded that there was evidence of malnutrition. Based upon his observations, the doctor sent the child to Oklahoma City for neurological treatment, as there was hemorrhaging in the cranial area. The doctor finally stated that he found no signs of normal, accidental trauma and related that it was his opinion that the child was abused, and therefore summoned the police.

Janine Phanstiel then testified that she was an employee of the Southern Heights Day Care Center. The witness stated that Lori Dirham was brought to the Center for approximately four days in November and again for approximately five days in January. The witness stated that she observed the child " . . . had scars and bruises and cuts and appeared to be pretty banged up." The child took meals there and always seemed to be hungry and asking for food and water. The witness then stated that when the child was brought to the Center in January, she observed fresh cuts and bruises about her body, particularly open bleeding cuts on the face and bruises on her legs. The witness suspected the child was a victim of child abuse and reported the matter to a juvenile officer.

George Stover, a detective with the Enid Police Department, testified that on February 16, 1973, he went to St. Mary's Hospital emergency room to observe an injured child. He identified State's Exhibits 1 and 2 as being photographs of the child taken in the hospital. Officer Stover further related that he located the child's mother, Mary Dirham, at a nursing home and arrested her. The defendant was arrested and brought to the Police Station by another officer. The witness and another detective questioned the defendant after advising him fully of his rights. The defendant said that he had "on occasion, struck the child with both his hands and a belt." Further, "he had tied the child to a potty chair with his belt while he took a bath" and to "potty train" her. The defendant also stated that "the child fell into the bathroom heater and received some burns and that the child fell out of the baby bed and that is how she bruised her head."

Dr. Stanley Pelofsky, Chief Neurosurgeon at University Hospital in Oklahoma City, testified that on February 21, 1973, Lori Deniece Dirham was admitted to that hospital. He observed the child to be comatose and blind at that time. The doctor stated that she had multiple abrasions, many of which were recent, as well as some old scars around her head and neck. The doctor further found dehydration and malnutrition and, also, found a large blood clot on the entire left side of the brain. It was his opinion that there was a good chance the child had incurred permanent brain damage. The State then rested.

Charles James Runnels, testifying in his own defense, related that he was traveling with a carnival when he met Mary Deniece Dirham in April of 1972. They settled in Enid in August of 1972. The defendant stated that following Thanksgiving of that year he began cohabitating with Mary Dirham as husband and wife, and he occasionally spanked the child with his hand and "lightly" with a belt. He stated that he never hit the child about the head or face, but that she had fallen down a stairway. The defendant further testified that in October he was in an automobile accident and the child fell from the seat and hit the floorboard and that the child fell on other occasions about the house and outside while playing. Defendant stated that the child also fell off of a porch and observed that his wife spanked the child with her hand and sometimes with a belt. However, he never saw Mary Dirham hit the child

around the head or face. The defendant then related that he had never taken the child to a doctor as both he and his wife were working, but had talked about doing something about her condition. On the day the defendant was arrested he did not notice anything unusual about the child's condition except that the infant was sick. The defendant stated that the little girl had been refusing food and water for six days. The defendant also stated that it was Mary Dirham, and not he, who tied the infant to the potty chair. The only marks the defendant observed on the child on February 16 were some underneath the child's arm. No further evidence was offered by either side.

The defendant's first proposition in error urges that the verdict rendered by the jury was given under influence of passion and prejudice and should, therefore, be set aside or modified. To support said contention, the defendant brings to this Court's attention that portion of the transcript wherein the prosecuting attorney, through Officer Stover, was introducing into evidence certain pictures of the child taken by the Officer during the first medical examination in the emergency room. No objection was made to the introduction of the pictures, but defense counsel did request that the trial judge cause the phrase "child beating" written on the back of said pictures to be obliterated. The record further reflects that a felt marker was used to cross out the phrase but that upon close inspection the words could still be read by an attentive juror. The defendant, therefore, urges that the fact that said phrase could be read by the jurors unduly influenced the trier of fact to the prejudice of the defendant. With this contention we do not agree.

After the trial court marked over the words with the felt marker, the pictures were submitted to the jury without

further objection. It should also be noted that the information was read to the jury and the crime charged was labeled "child beating". The same is true with respect to the wording of the instructions as read to the jury. Therefore, it is this Court's opinion that (1) the defendant failed to properly preserve the question for appeal when he did not object to the submission of the pictures to the jury after the trial court had attempted to obliterate the complained of phrase; and (2) the labeling phrase used on the back of said pictures in the instant case did not tend to prejudice the jury against the defendant. For both reasons the defendant's first proposition in error is without merit.

The defendant's second proposition urges that the trial court committed reversible error when it failed to sustain defendant's demurrer to the evidence. Again, we do not agree. An examination of the evidence and testimony presented by the State reflects that there was sufficient direct and circumstantial evidence to withstand a demurrer to the evidence and to submit the issues to the jury as the trier of facts. The jury then becomes the exclusive judge of the weight of the evidence and its credibility. Where there is a direct conflict in the evidence, this Court will not interfere with the jury's determination where there is competent evidence in the record from which the jury might reasonably conclude that the defendant is guilty. See Hudson v. State, Okl.Cr., 399 P.2d 296. Defendant's last proposition in error is without merit.

From a consideration of the record as a whole, we find that the defendant has been deprived of no substantial right, that the issues were fairly presented to the jury, and the defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT and BUSSEY, JJ., concur.